## NANCE *v.* GENTRY.

1. Husband and Wife—Separation—Public Policy.

    It is not the policy of the law to encourage the separation of husband and wife with or without divorce.

2. Same—Contracts Before Separation.

    A contract between husband and wife will not be sustained when likely to favor a separation that has not yet taken place.

3. Same—Contracts After Separation.

    When a husband and wife have fully decided to separate, a contract between them that does not spring from fraud or coercion, and contemplates a suitable provision for the wife and children by an equitable division of the property, is maintainable.

4. Judgment—Collateral Attack—Divorce—Contract for Support—Alimony—Provision in Lieu of Dower.

    In action by former wife on contract between herself and former husband for her future support and maintenance, entered into after separation had taken place but before husband procured

---

Illegality of a contract for separation or maintenance, see 2 Restatement, Contracts, § 584.

Collateral attack on void judgment in State where rendered and in other States, see Restatement, Judgments, § 11.

Collateral or direct attack upon a valid judgment which is erroneous, see Restatement, Judgments, § 11, comment b.

a *pro confesso* decree of divorce, his testimony that the parties had not lived together in this State, that the causes for divorce arose outside of the State, and neither party had resided continuously in this State long enough to give the court jurisdiction did not open to collateral attack the decree of divorce which did not contain a provision for alimony, as permitted but not required by statute, although it did comply with mandatory statutory provision and included a provision in lieu of dower (3 Comp. Laws 1929, §§ 12745, 12766).

5. DIVORCE—ALIMONY—DISCRETION OF COURT.
Granting or withholding alimony rests in the discretion of the court (3 Comp. Laws 1929, § 12745).

6. SAME—ALIMONY—DIVISION OF PROPERTY.
An award of alimony is essentially a different thing from a division of property of the parties (3 Comp. Laws 1929, §§ 12745, 12766).

7. JUDGMENT—COLLATERAL ATTACK—DIVORCE—ALIMONY—CONTRACT FOR SUPPORT.
There is no conflict between an action to enforce a valid contract for wife's support and a subsequent decree of divorce which did not include a provision respecting alimony (3 Comp. Laws 1929, § 12745).

8. CONTRACTS—COUNTERCLAIMS—LIMITATION OF ACTIONS—ASSUMPTION OF ANOTHER'S DEBT.
In former wife's action on valid contract for support, husband's claim that he had "foregone" a claim against plaintiff's relatives which was a sufficient consideration for plaintiff foregoing a claim against him *held*, untenable where his claim had been barred by statute of limitations and it does not appear that wife had ever assumed or agreed to pay such claim (3 Comp. Laws 1929, § 13976).

Appeal from Wayne; Miller (Guy A.), J. Submitted July 28, 1942. (Docket No. 81, Calendar No. 41,837.) Decided October 5, 1942.

Action by Mattie A. Nance against Claude Gentry for sums due on a parol agreement. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Charles F. Meyler (Morris Magy,* of counsel), for plaintiff.

*Hugh K. Davidson,* for defendant.

BOYLES, J.   Plaintiff brought this action at law against her former husband for $540 claimed to be the balance due her on an alleged oral agreement made after they had separated to pay her $600 in lieu of future support and maintenance.   The case was tried by jury, plaintiff had verdict and judgment, and on appeal the defendant claims that a former wife cannot recover against her former husband (after he has obtained a *pro confesso* divorce) on a verbal agreement for support entered into during coverture, and that the instant case is a collateral attack on the decree of divorce.

Shorn of unessential details, this is the factual situation:   These parties were schoolteachers, married in Kentucky in 1923, lived there in the marital relation until 1932 when both resumed their studies in school.   The husband came to Detroit in 1933, plaintiff followed him in October, they cohabited together only on one occasion, and there was a separation.   In May of the succeeding year, 1934, plaintiff filed a complaint against defendant in the recorder's court of Wayne county, domestic relations division, the records of which indicate that defendant appeared on May 11th in response to a notice or request and promised to pay $8 per week for his wife's support.   On May 17th these parties met at a hotel by appointment, and plaintiff testified:

"*Q.*   What transpired at the time you met him at the Tuller hotel?

"*A.*   I called him there to know what personal effects he wanted of books, of furniture, of pictures, or anything that I had that he would like to have,

and he told me what he would like to have. When I went home, I mailed them to him.

"*Q.* Was there anything further discussed on that day?

"*A.* While we were talking together, he said, 'Would you like to make a settlement on this right now?' I said, 'What do you mean?' He said, 'How much money do you want?' Well, I said, 'Of course, you should pay me several thousand dollars.' He said, 'Girl, I do not have several thousand dollars. I am in debt, not making much myself.' And we decided that since we had the bank stock and the car I would settle for $600.

"*Q.* Did he agree to pay you the $600?

"*A.* He agreed to that.

"*Q.* In what manner did he agree to pay you that $600?

"*A.* He said, 'You know, you have to stay in Detroit to collect that $8 a week.' I said, 'Do I?' He said, 'Yes.' I was thinking—'You will spend it all for board and room if you stay here. Why not let me pay you $25 a month, and you could go anywhere you want to, go back to work, or do anything you want to, and I will send you $25 a month.'

"*Q.* What was the $8 a week you refer to?

"*A.* $8 a week was awarded me by Mrs. Rutledge in the domestic relations court.

"*Mr. Davidson:* I object to it on the same ground, if the court please.

"*The Court:* It is a matter they were talking about. It may stand.

"*Q.* Was there any conversation between Mr. Gentry and yourself at that time as to manner you would provide for yourself after that date, May 17th?

"*A.* I would go out and make my own living.

"*Q.* Was anything said to you with reference to the $8 a week?

"*A.* He said, 'Take that out of the hands of the court, because it will relieve me of any embarass-

ment, and I will just send you the $25 instead of paying that $8 to the court.'

"*Q.* Did you see Mr. Gentry after May 17th?

"*A.* He says, 'Now, if you will agree to this,' on that same meeting, he said, 'If you will agree to this, you come down in the morning to that court, and tell her, and then I will meet you here tomorrow afternoon, and if you have done that I will pay you the first $25.' I went down to court the next morning and attended to it, and went to the hotel that afternoon, and he paid me the first $25. I gave him a receipt for the $25, he asked me for it. I continued to live in Detroit until June 9th. On June 6th his brother, the one that is present here this afternoon, brings in an envelope to my brother's apartment, containing $25, one night. That was the second payment.

"*Q.* Did you give him a receipt?

"*A.* It seems to me I mailed one the next day. On June 9th I left Detroit and went back to Slaughters, to my mother's home.

"*Q.* Subsequent to May, 1934, did the defendant, Mr. Gentry, pay you any money during the month of June and July?

"*A.* That was for the month of June, the second payment. In July I heard nothing from him. In August, the 1st, I heard nothing. So along about the 5th or 6th, I wrote him that he is not going to keep up his agreement. By return mail I got a letter."

The letter enclosed $10 and stated:

"This is all I have now.

"You may send receipt and rest will follow next time."

Shortly afterward plaintiff received a second letter from defendant stating: "I will however send you some more as soon as possible," and asking about a divorce. The defendant does not

squarely deny the agreement. When asked about it on cross-examination, he said:

"*Q.* You want us to believe this agreement testified to by Miss Nance is something she brought up out of the clear sky?

"*A.* I do not think that is for me to answer."

In September, 1934, defendant filed a bill for divorce in Wayne county, obtained substituted service of an order of publication on plaintiff herein by registered mail. She was defaulted for nonappearance and on January 24, 1935, the defendant herein obtained a *pro confesso* decree of divorce.

The contract on which this suit is bottomed was made during coverture after the parties had separated. In considering the validity of contracts made between husband and wife during coverture for future support of the wife, Cooley, C. J., in *Randall* v. *Randall,* 37 Mich. 563, said:

"The chief difficulties with such contracts are encountered when they undertake to provide for a separation of the parties and a breaking up of the marriage either with or without a divorce. It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about. It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported: *Durant* v. *Titley,* 7 Price, 577 (146 Eng. Rep. 1066); *St. John* v. *St. John,* 11 Ves. 526 (32 Eng. Rep. 1192); *Westmeath* v. *Westmeath,* Jac. 126 (37 Eng. Rep. 797). But when a separation has actually taken place, or when it has been fully decided upon, and the articles contemplate a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during the coverture, no principle of public policy is disturbed by them; on the contrary, if they are fair and

equal, and are not the result of fraud or coercion, reasons abundant may be found for supporting them, in their tendency to put an end to controversies, to prevent litigation, and to give to the wife an independence in respect to her support which without some such arrangement she could not have under the circumstances.''

This statement of the law has been consistently followed by this court in its subsequent decisions. *Palmer* v. *Fagerlin,* 163 Mich. 345; *Mesler* v. *Jackson Circuit Judge,* 188 Mich. 195. The contract sued upon was a valid contract. Is it now unenforceable on the ground that the present suit is a collateral attack on the decree of divorce? The court below charged the jury that the decree of divorce was void on account of lack of jurisdiction of the court which entered it. It is true that in the present case defendant testified that the parties had not lived together in this State, that the causes for divorce arose outside of this State, and neither party had resided continuously in this State long enough to give the court jurisdiction. This does not open the decree to collateral attack. *Gunn* v. *Gunn,* 205 Mich. 198; *Bankers Trust Co.* v. *Foto,* 301 Mich. 676.

However, the present suit is not a collateral attack on the decree. The decree in the divorce case provided:

"It is further ordered that the defendant pay to the plaintiff the sum of $1 in lieu of dower, and in bar, and in full satisfaction, of any claim or claims in or to any *property* of the defendant."

This was a compliance with the mandatory requirement of 3 Comp. Laws 1929, § 12766 (Stat. Ann. § 25.131), which requires that the court granting a decree of divorce shall include in it a provision

in lieu of dower of the wife in the property of the husband. However, the decree made no provision for payment of *alimony* or in lieu of alimony for the support of the plaintiff herein. The statute (3 Comp. Laws 1929, § 12745 [Stat. Ann. § 25.103]) does not require such a provision, although it authorizes the court to decree alimony. Granting or withholding alimony rests in the discretion of the court. *Tyson* v. *Tyson,* 283 Mich. 192; *Wood* v. *Wood,* 288 Mich. 14.

"The award of alimony is essentially a different thing from a division of property of the parties." *Mesler* v. *Jackson Circuit Judge, supra.*

The decree contained no provision for the support of plaintiff, and there is no conflict between the present suit to enforce a valid contract for plaintiff's support and the decree as entered.

One further claim by defendant is that he has "foregone" a claim against plaintiff's relatives for money which he claims they owe him and that this is a sufficient consideration for plaintiff foregoing any claim against him. It is sufficient to say that the record indicates if there was any such claim against plaintiff's relatives it was barred by the statute,[*] and there is no testimony that the plaintiff herein ever assumed or agreed to pay the same.

Judgment is affirmed, with costs to appellee.

Chandler, C. J., and North, Starr, Butzel, Bushnell, and Sharpe, JJ., concurred. Wiest, J., did not sit.

---

[*] See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—Reporter.